# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

MILDRED NIEVES-OCASIO,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 18-1396 (MEL)

**OPINION AND ORDER**

    Pending before the court is Mildred Nieves-Ocasio's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF Nos. 3, 18. Plaintiff challenges the Commissioner's finding that she is not entitled to disability benefits following a redetermination review. Plaintiff alleges that the administrative law judge erroneously disregarded evidence, that the redetermination review violated her Fifth Amendment procedural due process rights, and that the redetermination review process violated the Administrative Procedure Act.

**I.    Procedural and Factual Background**

    On September 26, 2009, Plaintiff filed an application for Social Security benefits alleging that on August 31, 2007 ("the onset date"), she became unable to work due to disability. Tr. 158.[1] On December 18, 2009, a disability examiner found Plaintiff disabled since May 1, 2009. Tr. 446. For several years, Plaintiff received disability benefits under the Social Security disability insurance program. ECF No. 18, at 3. After an extensive fraud investigation conducted by the United States Department of Justice and the Social Security Administration's Office of the

---

[1] "Tr." refers to the transcript of the record of proceedings.

Inspector General ("OIG"), the Social Security Agency ("the SSA") notified Plaintiff, on January 31, 2014, that her benefits were suspended pending a redetermination of her entitlement to them. Tr. 518.

In the redetermination review, the SSA disregarded evidence submitted by two sources, treating neurologist Dr. José R. Hernández-González ("Dr. Hernández") and non-attorney representative Mr. Samuel Torres-Crespo ("Mr. Torres-Crespo"), who had been criminally charged. Tr. 158. State agency medical consultant Dr. Arvind Chopra reviewed the remaining evidence in the file and concluded that there was insufficient evidence in the file to rate the severity of Plaintiff's limitations during the relevant period. Tr. 456-57. State agency psychological consultant Dr. H. Rozelman reviewed the file and determined that the remaining evidence did not show a severe mental impairment. Tr. 457-58. On February 21, 2014, the SSA determined that Plaintiff was not disabled and notified Plaintiff in a letter. Tr. 457-59, 521-26.

On March 7, 2014, Plaintiff appealed the termination decision and submitted additional evidence; the termination was affirmed. Tr. 527, 532-39. Thereafter, Plaintiff requested a hearing, which was held on September 11, 2017, before Administrative Law Judge Theodore Grippo, ("the ALJ"). Tr. 171-86. On January 31, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled under the Act, and thus not entitled to disability benefits for the period of August 31, 2007, Plaintiff's alleged onset date, through December 18, 2009, the date of the original approval of benefits. Tr. 158-65. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-4. Plaintiff filed a complaint on June 21, 2018. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 18, 23.

## II. The ALJ's Redetermination Decision

**A. Standard of Review**

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir.

1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Rather than appealing an initial disability determination, Plaintiff appeals a redetermination decision. Under section 405(u), "The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). "Similar fault" is involved in a determination if "an incorrect or incomplete statement that is material to the determination is knowingly made" or

"information that is material to the determination is knowingly concealed." Id. at § 405(u)(2). The SSA may have reason to believe fraud or similar fault was involved through an investigation by the OIG. See, e.g., 42 U.S.C. § 1320(a)(8)(l).

During a redetermination review, the Commissioner "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." Id. at § 405(u)(1)(B). The adjudicator may consider existing evidence and any new and material evidence that does not involve fraud or similar fault. See HALLEX I-1-3-25(A)[2]. A beneficiary may submit additional evidence if it is "new, material, and related to the time period at issue." Id. at I-1-3-25(C)(4)(3).

The adjudicator then determines, based on the eligible evidence, whether the beneficiary qualified for benefits at the time of the application. Id. at I-1-3-25(C)(3). Should the Commissioner determine "that there is insufficient evidence to support such entitled, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3).

**C. Legal Analysis: The ALJ's Redetermination Decision**

Consistent with Section 405, the ALJ disregarded evidence submitted by Dr. Hernández dated from August 1, 2008, through October 28, 2013, and any evidence submitted, supplied, or sourced by Mr. Torres-Crespo dated from August 1, 2008 through September 26, 2014. Tr. 158. Accordingly, the ALJ disregarded the following evidence: (1) a Function Report submitted by Mr. Torres-Crespo, (2) a Radiology Report by examining radiologist Dr. German López, referred by Dr. Hernández, (3) an EMG and Nerve Conduction Study submitted by Dr. Hernández, and

---

[2] The Appeals Council defines its procedures and guiding principles in the Hearings, Appeals and Litigation manual, ("HALLEX"). While not entitled to deference, it illustrates the recommended approach ALJs and the Appeals Council take in redetermination cases. See Alicea-González v. Comm'r of Soc. Sec., Civ. No. 18-122, 2019 WL 4233925, at *2 (D.P.R. Sept. 6, 2019).

(4) Progress Reports submitted by Dr. Hernández. Tr. 161. The ALJ then considered the remaining evidence to determine whether Plaintiff was disabled from August 31, 2007 through December 18, 2009. Tr. 161-65.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. Tr. 161. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period from August 31, 2007 through December 18, 2009. Tr. 161. At step two, the ALJ found that Plaintiff's affective disorder was her only medically determinable impairment during the relevant period. Tr. 161-62. The ALJ also found that after disregarding evidence from Dr. Hernández and Mr. Torres-Crespo, Plaintiff's alleged back disorder was not a medically determinable impairment. Tr. 161-62. Next, the ALJ found that Plaintiff's affective disorder was not a severe impairment because it did not significantly limit her ability to perform basic work-related activities. Tr. 162-65. Because the ALJ found that Plaintiff did not have a severe impairment at step two, the ALJ concluded that Plaintiff was not disabled during the relevant period from August 31, 2007 through December 18, 2009. Tr. 165.

### III. Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on three grounds. First, Plaintiff alleges that the Commissioner erroneously disregarded evidence from Dr. López. ECF No. 18, at 16-17. Next, Plaintiff alleges that the SSA's redetermination process violated her due process rights by not affording her the chance to challenge the findings of fraud in her disability application. Id. at 8. Third, Plaintiff claims that the redetermination process violated the Administrative Procedure Act ("APA") by alleging that the redetermination hearings are formal adjudications yet do not provide extensive procedural protections. Id. at 13-14.

7

**A. The ALJ's Disregarding of Evidence[3]**

Plaintiff alleges that the ALJ committed error in disregarding evidence that was produced by a non-indicted doctor, examining radiologist Dr. German López. ECF No. 18, at 17. During a redetermination review, the Commissioner "shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B). The ALJ disregarded evidence from Dr. Hernández from August 1, 2008 through October 28, 2013. Tr. 158. Accordingly, the ALJ disregarded Exhibit 1F, x-rays of the cervical and lumbar spine, ordered by Dr. Hernández, and signed by Dr. López. Tr. 161, 908.

The Radiology Report produced by Dr. López was improperly disregarded for purposes of the disability determination. The ALJ did not cite to any evidence that fraud may have been involved in the Radiology Report other than that it was ordered by Dr. Hernández. This feeble connection did not provide the ALJ with adequate "reason to believe" fraud was involved in the evidence. See 42 U.S.C. § 405(u)(1)(B). Therefore, the ALJ's decision to disregard the Radiology Report is not supported by substantial evidence.

The SSA argues that even if the Radiology Report was not disregarded, the x-rays do not counter the ALJ's finding that Plaintiff's alleged back disorder was not a medically determinable impairment. ECF No. 23, at 24. The ALJ found that Plaintiff did not seek any treatment for her alleged back disorder and there were no referrals. Tr. 161. Further, a physical examination by examining physician Dr. Nelson L. Velázquez Rodríguez "found [Plaintiff] to have normal functioning, just needing some exercise to increase muscle tone in her arms, forearms, and legs."

---

[3] Plaintiff also contends that the ALJ's decision did not explain the significance of the dates of August 1, 2008 through October 28, 2013 for disregarding evidence from Dr. Hernández when Plaintiff's dates of the prior favorable disability determination were from August 31, 2007 through December 18, 2009. Tr. 161; ECF No. 18, at 17. The ALJ disregarded evidence from those dates because August 1, 2008 is when Dr. Hernández associated himself with Mr. Torres-Crespo in the fraudulent scheme and October 28, 2013 is when Dr. Hernández signed the plea agreement. See Tr. 625, 706. The radiologist report is dated August 22, 2009, within the applicable time frame. See Tr. 161, 908.

Tr. 162, 944. Therefore, the ALJ's finding that Plaintiff's alleged back disorder is a non-medically determinable impairment is supported by substantial evidence and his disregard of Dr. López's Radiology Report was thus, harmless error.

**B. Due Process**

Plaintiff contends that the SSA violated her due process rights by not permitting her to challenge the fraud allegations in her application. ECF No. 18, at 8-13. The SSA argues that Plaintiff was "afforded a full and fair process." ECF No. 23, at 17.

Plaintiff raises a Fifth Amendment procedural due process claim. "[T]he interest of an individual in continued receipt of [disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Supreme Court set out a three-part balancing test in Mathews v. Eldridge the courts must use to evaluate procedural due process claims. Id. at 355. A court must weigh three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. The Mathews factors weigh as follows.

As to the first factor, the affected private interest, Plaintiff most likely has a substantial interest in continued receipt of disability benefits; erroneous termination may cause significant hardship. See id. at 342. To her detriment, Plaintiff did not offer examples of how significant the loss of her disability benefits was, but it can be reasonably assumed that the monetary loss affects her ability to provide for herself. Plaintiff does mention that the SSA and the Center for Medicare and Medicaid Services sent payment demands compelling her to repay all previously covered medical expenses. See ECF No. 18, at 11. Additionally, "there may be a loss of dignity

9

when the government terminates disability benefits on the basis of fraud or similar fault involved in an application." Picon-González v. Comm'r of Soc. Sec., Civ. No. 18-1016, 2019 WL 4187701, at *14 (D.P.R. Sept. 4, 2019). An association of fraud and the inability to challenge the government's declaration that there is "reason to believe" the beneficiary was involved in fraud may damage a person's reputation. See id. The SSA suggests that Plaintiff could mitigate the effects of termination by filing a new application. ECF No. 23, at 12. Filing a new application for disability benefits is not an accessible mitigation method because beneficiaries must restart the entire process. Transcripts may be in the thousands of pages, claimants fill out detailed forms, and applicants must track down and turn over a plethora of medical records. See Picon-González, 2019 WL 4187701, at *14. Indeed, "[a] chance to start over cannot erase loss caused by the violation of one's constitutional rights." Id. at *16.

As to the second factor, risk of erroneous deprivation of such interest, Plaintiff alleges that fraud requires an individualized, adversarial adjudication. ECF No. 18, at 12. Plaintiff argues that mass investigations that are not explained by the government inspire little confidence and raise an unacceptably high risk of error. Id. The SSA claims that there are adequate safeguards to mitigate the risk of erroneous deprivation. ECF No. 16, at 13-15.

First, the SSA suggests that Plaintiff could submit additional evidence from the relevant period during the redetermination process. ECF No. 23, at 13. Filing additional evidence is a more accessible safeguard than filing a new application, but the process may be complex and difficult. Assembling medical records from years prior is onerous. See Alicea-González v. Comm'r of Soc. Sec., Civ. No. 18-122, 2019 WL 4233925, at *11 (D.P.R. Sept. 6, 2019). "Many beneficiaries provide the only copies of their medical records to representatives during the initial

10

claim, others may have lost their records, physicians may have destroyed old reports, and some plaintiffs may have foregone second opinions due to trust in their primary physician." Id.

The SSA also argues that the Plaintiff was provided with a full evidentiary hearing before an impartial ALJ, "the gold standard in administrative process." ECF No. 23, at 14. In this case, the hearing is not a robust safeguard because "the hearing is restricted to the accuracy of the admissible medical records and the SSA's conclusions." Rivera-Cepeda v. Comm'r of Soc. Sec., Civ No. 18-1092, 2019 WL 4201573, at *10 (D.P.R. Sept. 5, 2019). There may be a risk of erroneous deprivation because beneficiaries do not receive notice of the factual determinations detailing the reason to believe fraud was involved in their application, and so they cannot challenge the type of evidence disregarded. See Alicea-González, 2019 WL 4233925, at *11-12. "When a party is improperly handicapped in disputing a preliminary issue, the overall outcome is also tainted." Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 798 (6th Cir. 2018). The risk of erroneous deprivation is "too high" any time a citizen is deprived of "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." Id. at 799; Alicea-González, 2019 WL 4233925, at *11.

As to the final Mathews factor, the government's interest, the SSA makes arguments about fiscal and administrative burdens. ECF No. 23, at 15. The SSA contends that if the Commissioner was required to make a specific finding of fraud in all the cases affected by Dr. Hernández it would force the SSA to conduct mini-trials and "make specific findings of fraud in 7,000 cases the New York FPU reviewed." Id. at 16. But, the SSA's claim is unpersuasive because it is unclear "why an ALJ would be unable to review OIG evidence in addition to the complex and lengthy records they already endure." Rivera-Cepeda, 2019 WL 4201573, at *11.

11

The SSA also raises the issue that requiring specific findings in every redetermination case would consume the resources of independent law enforcement entities, like the Department of Justice, of their ability to investigate and prosecute program fraud. Id. at 20. While requiring specific findings would be an additional responsibility, it would not "strip away authority to investigate or prosecute." See Picon-González, 2019 WL 4187701, at *16.

On balance, the Mathews factors favor Plaintiff whose disability benefits were terminated after this OIG investigation led to a redetermination review. See Alicea-González, 2019 WL 4233925, at *11. Plaintiff was denied the opportunity to challenge the OIG investigation and the application of the investigation's findings to her own medical record. See id. The administrative burden on the SSA cannot stand up to the risks of erroneous deprivation. The court dispenses with Plaintiff's remaining argument regarding the Administrative Procedure Act as it finds the Fifth Amendment procedural due process argument is dispositive of this case.

### IV.     Conclusion

Based on the foregoing analysis, the court concludes that the Fifth Amendment Due Process clause requires the SSA to give Plaintiff the opportunity to challenge the application of fraud to her case. See Alicea-González, 2019 WL 4233925, at *11. The Commissioner's decision denying Plaintiff's disability claims is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of October, 2019.

s/Marcos E. López
U.S. Magistrate Judge
